# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL CALIX, individually and on behalf of all others similarly situated | * * * | CIVIL ACTION NO. 10-00676 |
| vs. | * * | JUDGE: JACKSON |
| APPLE, INC. | * * | MAGISTRATE: REIDLINGER |

---

## FIRST AMENDED COMPLAINT

Plaintiff, Daniel Calix, on behalf of himself and all others similarly situated, alleges as follows:

## PARTIES

1.　Plaintiff, Daniel Calix, is a resident of East Baton Rouge Parish, State of Louisiana. Plaintiff purchased his defective iPhone on or about July 3, 2009.

2.　Defendant, Apple, Inc. ("Apple"), is a California corporation with its principal place of business in California.　At all times pertinent hereto, Apple or its agents, manufactured, distributed, marketed and sold the defective iPhone, iPhone 3G, iPhone 3GS and iPod Touch units (hereinafter referred to collectively as "Apple Devices") throughout the United States, including this District, to Plaintiff and class members.

3.　Venue is proper in this judicial district as Defendant has sold, marketed and received profits from the sale of defective Apple Devices units in this District.　Defendant has caused tortious injury by acts or omissions in this District and/or caused tortious injury in this District by acts or omissions outside this District.

1

4.      Plaintiff and class members have used their device in this District and class members are domiciled herein.

5.      Class members have purchased their Apple Devices and/or presented their devices for repair in this District.

## GENERAL ALLEGATIONS

6.      On or about June 29, 2007, Defendant released the iPhone, an internet and multimedia-enabled "smartphone." Apple has sold subsequent versions of the iPhone referred to as the iPhone 3G and iPhone 3GS, and such products have ranged in price from $99 to $499, depending on the features and storage capacity of the device, and whether the cost is subsidized as a result of entering into a contract for wireless services from the exclusive provider of those services, AT&T Mobility, L.L.C ("AT&T"). Since its inception, Apple has sold more than 34 million iPhone units.

7.      The iPhone is configured so that U.S. customers must purchase cellular telephone service from AT&T in order to use the iPhone to make telephone calls. To activate and use all the iPhone's features, consumers must enter into a two-year contract with AT&T for wireless services.

8.      On or about September 5, 2007, Defendant released the iPod Touch throughout the United States. The iPod Touch is virtually identical to the iPhone in design, manufacture, and features, except for those features that pertain to the iPhone's telephonic capabilities. Apple sells the iPod Touch at prices ranging from $199 to $399, depending on features and storage capacity. Since its release Apple has sold more than 32 million iPod Touch units.

### The Standard Warranty and Extended Warranty

9.      When consumers purchase Apple Devices, they are advised by Apple and its agents - in the written material that accompanies the product, on internet websites and locations where Apple

2

Devices are sold - that the cost of Apple's standard one-year limited warranty (the "Standard Warranty") is included in the purchase price. Consumers are also told that the Standard Warranty protects Apple Devices "against defects in materials and workmanship under normal use."

10.    The terms of the Standard Warranty obligate Apple to "either (a) repair the hardware defect at no charge, using new parts or parts equivalent to new in performance and reliability, (b) exchange the product with a product that is new or equivalent to new in performance and reliability and is at least functionally equivalent to the original product, or (c) refund the purchase price of the product."

11.    Apple also offers consumers the opportunity to purchase the "AppleCare Protection Plan" for Apple Devices, which Apple markets as providing "comprehensive coverage" under an extended warranty for two years from the date of original purchase (the "Extended Warranty"). The Extended Warranty may be purchased for the iPhone for an additional $69.00 and for the iPod Touch for an additional $59.00. The terms of the Extended Warranty obligate Apple to repair or replace Apple Devices if there is a defect in materials or workmanship during the coverage period.

12.    Some Standard Warranties exclude coverage for "damage caused by accident, abuse, misuse, liquid spill or submersion, flood, fire, earthquake, or other external causes," while others omit the "liquid spill or submersion" language, stating that they exclude coverage for "damage caused by accident, abuse, misuse, flood, fire, earthquake, or other external causes."

13.    Apple has included similar language in the exclusion provision of the most recent versions of the iPhone and iPod Extended Warranties i.e., damage "caused by accident, abuse, neglect, misuse (including faulty installation, repair or maintenance by anyone other than Apple or an Apple Authorized Service Provider), unauthorized modification, extreme environment (including

3

extreme temperature or humidity), extreme physical or electrical stress or interference, fluctuation or surges of electrical power, lightning, static electricity, fire, acts of God or other external causes". The damage-exclusion provisions of the Standard Warranty and Extended Warranty are collectively referred to herein as the "Liquid-Damage Exclusion."

### The Liquid Submersion Indicators

14.     In a document titled "iPhone and iPod: Water damage is not covered by warranty", Apple depicts the location of the external Liquid Submersion Indicators that are located in the headphone jack in all Apple Devices, and in the dock-connector housing of the iPhone 3G and iPhone 3GS.

15.     Apple represents to consumers that the purpose of the external Liquid Submersion Indicators is to enable Apple to determine "whether liquid has entered the device[,]" and that Liquid Submersion Indicators are designed not to be triggered by humidity and temperature changes that are "within the product's environmental requirements described by Apple." Apple also states that [c]orrosion, if evident, leads to the irreversible deterioration or degradation of metal components and may cause the device to not work properly."

16.     Despite Apple's knowledge that Liquid Submersion Indicators are not a reliable indicator of damage due to submersion, Apple uses the Liquid Submersion Indicators to void the Standard Warranty and Extended Warranty on devices when the Liquid Submersion Indicator has turned pink or red.

17.     Upon information and belief, Apple has instructed and trained its employees and agents to refuse warranty coverage to consumers who seek a repair or replacement of an Apple Device if its external Liquid Submersion Indicator has been triggered, i.e. turned pink or red.

18.     Upon information and belief, Apple has instructed and trained its employees and agents to inform Apple Device owners that their Standard and Extended Warranties are void due to submersion or immersion in liquid, if the Liquid Submersion Indicator has been triggered.

19.     Upon information and belief, Liquid Submersion Indicators can be triggered by, among other things, cold weather and humidity that are within Apple's technical specifications for the Apple Devices, and which weather conditions are prevalent in areas where the devices are marketed and sold, including the State of Louisiana.

20.     External Liquid Submersion Indicators can also be triggered by other types of moisture that should not cause damage in any event - such as a palm that becomes sweaty after a work-out, and other small amounts of moisture to which the devices would be exposed during ordinary, foreseeable use.

21.     In addition to the external Liquid Submersion Indicators, Apple Devices contain internal Liquid Submersion Indicators, whose purpose is to assist Apple service personnel in verifying whether those devices have actually been damaged due to liquid spills or submersion.

22.     Despite the availability of an internal Liquid Submersion Indicator that better indicates the presence of actual damage by liquid spills or submersion (*e.g.*, inoperable circuitry as a result of corrosion), Apple improperly restricts the examination of the internal Liquid Submersion Indicator.

23.     Apple employees, agents and representatives are permitted to conduct internal inspections only in rare circumstances (*e.g.*, when Apple technical-support personnel are directed to do so by Apple management), and that Apple's corporate policy dictates that Apple personnel are to refuse warranty coverage under the Standard and Extended Warranties whenever an external Liquid

Submersion Indicator has turned red or pink - without attempting to verify actual damage by examining the internal Liquid Submersion Indicators or by conducting an inspection to determine whether Apple Devices actually have been damaged by a liquid spill or submersion.

## "Out of Warranty Service"

24.     iPhone owners who wish to use their iPhone's telephonic features must enter into two-year wireless service contracts with AT&T, and must pay AT&T a substantial fee if they terminate that contract before the two-year period ends.  Consequently, consumers who are denied warranty coverage for a malfunctioning or non-functional iPhone must either (a) bear the cost of replacing or repairing their iPhone to avoid having to pay monthly wireless bills for an iPhone that is partially or fully non-functional, or (b) forego replacing or repairing their iPhone and pay the early-termination fee charged by AT&T, and forfeit investments they have made in their iPhone (*e.g.*, accessories, applications, digital media).

25.     Apple currently offers to sell replacement iPhones to consumers whose warranties had been voided as a result of its use of external Liquid Submersion Indicators at the reduced price of $199, without requiring them to extend their wireless-service contracts.  Plaintiff is informed and believes that Apple formalized this policy (which it calls "out of warranty service") and announced it to the general public in or about May 2009.

26.     As a condition to be permitted to purchase a replacement iPhone at the reduced price, consumers were (and are) required to relinquish their current iPhone to Apple without compensation.

## Plaintiff's Dealing With Apple

27.     Plaintiff Daniel Calix's experience is typical of those he seeks to represent in this action.  Plaintiff purchased an iPhone 3GS from Best Buy in Baton Rouge, Louisiana, on or about

6

July 3, 2009.

28.     When Plaintiff's iPhone stopped functioning in or about June 2010, Plaintiff took his iPhone to a local Apple store for a free repair or replacement under the Standard Warranty or Extended Warranty. Plaintiff was advised that he was not entitled to a cost-free repair or replacement of his iPhone.

29.     The Apple representative advised Plaintiff that his iPhone's warranty was void because an external Liquid Submersion Indicator had been triggered.  The Apple representative informed Plaintiff that it was Apple's corporate policy and practice to deny warranty claims when an external Liquid Submersion Indicator had been triggered, *i.e.* turned pink or red.

30.     Contrary to Apple's assertions, Plaintiff's iPhone had never been submersed, immersed or otherwise exposed to water.

31.     Plaintiff's experience with Apple is typical of the experience of other owners of Apple Devices, whose conduct has compelled consumers to bear the cost of repairing or replacing Apple Devices that Apple should have provided, and should be providing, free of charge under the Standard Warranty and the Extended Warranty.

32.     By virtue of the foregoing conduct, including, but not limited to, the enforcement of Apple's corporate policies and its misrepresentations and omissions of material facts about the true nature, purpose and accuracy of the external Liquid Submersion Indicators, the right coverage under the Standard Warranty and the Extended Warranty is rendered illusory.  As a result of Apple's improper application of the Liquid-Damage Exclusion, Defendant sells Apple Devices with the intent to exclude them from the warranty coverage Apple promises consumers it will provide - even when consumers pay extra for Extended Warranty coverage - simply because their Liquid

Submersion Indicator has been triggered, without any attempt by Apple to verify whether the Apple Devices actually have been damaged as a result of submersion or immersion in liquid.

33.      Accordingly, Plaintiff brings this action on behalf of himself and all others similarly situated to redress the unconscionable conduct of Apple that violates the public policy of the State of Louisiana, and obtaining an order enjoining Apple from continuing to implement and enforce the corporate policies and procedures that lead to its improper application of the Liquid-Damage Exclusion; to recover the sums Plaintiff and members of the proposed class have expended on repair and/or replacement of Apple Devices as a result of Apple's improper application of the Liquid-Damage Exclusion; to provide cost-free repair to members of the proposed class who were denied warranty coverage as a result of Apple's improper application of the Liquid-Damage Exclusion and have yet to repair or replace their Apple Devices; and for an award of actual damages, statutory penalties, attorney's fees and costs pursuant to La.R.S. 51:1401, *et seq.*

## CLASS ALLEGATIONS

34.      Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 and, to the extent applicable, Louisiana Code of Civil Procedure article 591 *et seq.,* on behalf of himself and all other persons similarly situated.

35.      The class that Plaintiff seeks to represent is defined as follows:

All Louisiana domicilaries who, while residing in Louisiana, purchased an iPhone, iPhone 3G, iPhone 3GS or iPod Touch and were denied Standard Warranty or Extended Warranty coverage because an external Liquid Submersion Indicator had been triggered, without determining whether the Apple Device had actually been damaged by liquid.

36.      Excluded from the class are the following:

a.      Apple, its subsidiaries, affiliates, officers, directors, and employees;

    b.      persons who have settled with and validly released Apple from separate, non-class legal actions against Apple based on the conduct alleged herein;

    c.      counsel, and the immediate families of counsel, who represent Plaintiff in this action;

    d.      the judge presiding over this action; and

    e.      jurors who are impaneled to render a verdict on the claims alleged in this action.

37.     Upon information and belief, the proposed class comprises thousand, if not millions of members. Since Apple's release of the Apple Devices, over sixty five million units have been sold. Therefore, the class is so numerous and geographically dispersed throughout the State of Louisiana that joinder of all members in one action in impracticable.

38.     Apple has acted with respect to Plaintiff and members of the proposed class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all class members. The questions of law and fact common to the class predominate over the questions that may affect individual class members, including the following:

    a.      whether the external Liquid Submersion Indicators produce false-positive results;

    b.      whether the external Liquid Submersion Indicators are designed to produce false-positive results;

    c.      whether and when Apple knew the external Liquid Submersion Indicators produced false-positive results;

    d.      whether the representations Apple has made about the nature, purpose, and accuracy of the external Liquid Submersion Indicators are false;

    e.      whether Apple was, and is, under a duty to disclose information about the true nature and purpose of the external Liquid Submersion Indicators;

9

f.      whether Apple intentionally withheld, failed to disclose, and/or intentionally concealed information about the external Liquid Submersion Indicators;

g.      whether relying on the external Liquid Submersion Indicators to treat the Standard Warranty and the Extended Warranty as void is unconscionable under the circumstances alleged herein;

h.      whether Apple is subject to liability for violating the Louisiana Unfair Trade Practices Act ("LUTPA"), La.R.S. 51:1401, *et seq.*;

i.      whether Apple is subject to liability for violating the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784;

j.      whether Apple violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209;

k.      whether Apple violated the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500-17536;

l.      whether Apple violated the Song-Beverly Warranty Act, Cal. Civ. Code §§ 1790-1793.2;

m.      whether compensatory or consequential damages should be awarded to Plaintiff and members of the proposed class;

n.      whether statutory damages should be awarded to Plaintiff and members of the proposed class;

o.      whether restitution should be awarded to Plaintiff and members of the proposed class;

p.      whether attorney's fees and costs should awarded to Plaintiff and members of the proposed class; and

q.      whether Apple should be enjoined from engaging in the conduct complained of herein.

39.    Plaintiff's claims are typical of the claims of all members of the class he proposes to represent in this action.

40.    Plaintiff will fairly and adequately represent and protect the interests of the class, and

does not have interests that are antagonistic to or in conflict with those he seeks to represent.

41.     Plaintiff has retained counsel who have extensive experience in the prosecution of class actions and other forms of complex litigation.

42.     In view of the complexity of the issues and the expense that the individual plaintiff would incur if he or she attempted to obtain relief from a large, transnational corporation such as Apple, the separate claims of individual class members are monetarily insufficient to support separate actions.  Because of the size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of in this Complaint.

43.     The class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation.  Absent a class action, class members will continue to suffer losses, Apple's violations of law will be allowed to proceed without a full, fair, judicially supervised remedy, and Apple will retain sums received as a result of its wrongdoing. A class action will provide a fair and efficient method for adjudicating this controversy.

44.     The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications with respect to thousands of individual class members, which would, as a practical matter, dispose of the interests of the class members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

45.     The proposed class satisfies the certification criteria of Federal Rule of Civil Procedure.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, *et seq.*)

46.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

47.     This claim for relief is brought pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA"), La.R.S. 51:1401, *et seq.*  Plaintiff is a "consumer," as that term is defined by La.R.S. 51:1402(1).

48.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the LUTPA, and were undertaken by Apple in transactions intended to result in, and which resulted in, the sale of goods to consumers.

49.     By engaging in the conduct alleged herein, Apple has violated the LUTPA by, *inter alia*, misrepresenting and falsely advertising that the price of Apple Devices includes one year of coverage "against defects in materials and workmanship under normal use" under the Standard Warranty and that the Extended Warranty extends that coverage to two years without disclosing Apple's policy of deeming warranty coverage void if a Liquid Submersion Indicator was triggered, regardless of whether the Apple Device in question had actually been damaged by exposure to liquid.

50.     In actuality, and unbeknown to Plaintiff and members of the proposed class, Apple's Standard and Extended Warranties were (and are) illusory.  By selling Apple Devices with an illusory Standard Warranty and by selling Extended Warranty coverage the is equally illusory, Apple has represented, and continues to represent, that Apple Devices and the Standard and Extended Warranties that pertain to them have characteristics, use and benefits, or qualities that they do not

have, and that they are of a particular standard, quality, or grade, when they are not, in violation of the LUTPA.

51.     By engaging in the conduct alleged herein, Apple has also advertised, and continues to advertise, goods with the intent not to sell them as advertised. Additionally, Apple has violated and continues to violate the LUTPA, by engaging in the conduct alleged herein, including, but not limited to, inserting a Liquid-Damage Exclusion provision in its Standard Warranty and its Extended Warranty that is unconscionable as applied under the circumstances alleged herein; by voiding its Standard Warranty and its Extended Warranty in an unconscionable manner; by failing to disclose that Apple does not intend to honor the terms of its Standard Warranty and its Extended Warranty if an external Liquid Submersion Indicator is triggered; and by representing that the sale of Apple Devices and the sale of the Extended Warranty policies conferred rights and remedies, which they did not.

52.     Plaintiff seeks an order awarding actual damages, attorney's fees and costs, and, because Apple engaged in the conduct alleged herein deliberately and with willful and malicious intent, statutory penalties. The total amount of damages suffered by Plaintiff and the class will be proved at trial.

53.     Plaintiffs also seeks an order enjoining Apple from violating the LUTPA by continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard and Extended Warranty coverage for Apple Devices without confirming that Apple Devices have actually been damaged by submersion or immersion in liquid, and from making false representations regarding the nature, characteristics, and scope of its Standard and Extended Warranties, and that a triggered external Liquid Submersion Indicator is sufficient to void applicable warranties.

54.     By committing the acts and practices alleged herein, Apple has engaged in unlawful, fraudulent, and unfair business practices in violation of the LUTPA.

55.     Apple's violations of the LUTPA continue to this day.  As a direct and proximate result of Apple's violations of the LUTPA, Plaintiff has suffered actual damage in that, *inter alia*, he paid more for his Apple Device than he would have had Apple not represented that its purchase price includes the Standard Warranty and paid for a replacement iPhone because Apple refused Plaintiff's request that it provide him with a cost-free repair or replacement pursuant to the Standard Warranty.

56.     Pursuant to La.R.S. 51:1408 and La.R.S. 51:1409, Plaintiff and the class seek an order that **(a)** enjoins Apple from continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard and Extending Warranty coverage; **(b)** requires Apple to honor the terms of its Standard and extended Warranty policies; **(c)** enjoins Apple from continuing to make false representations regarding the characteristics and scope of its Standard and Extended Warranties, and the nature, purpose, and accuracy of external Liquid Submersion Indicators;**(d)** requires Apple to make full restitution of all moneys wrongfully obtained from its violations of the LUTPA, as alleged in this Complaint; **(e)** requires Apple to pay Plaintiff and the class members statutory penalties; and **(f)** requires Apple to pay Plaintiff's and the class's attorney fees and costs.

## COUNT II
### (Breach of Warranty)

57.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this Complaint.

58.     Apple's Standard and Extended Warranties state, in relevant part, that they protect Apple Devices "against defects in materials and workmanship under normal use."  The terms of the

14

Standard and Extended Warranties obligate Apple to "either (1) repair the hardware defect at no charge, using new parts or parts equivalent to new in performance and reliability, (2) exchange the product with a product that is new or equivalent to new in performance and reliability and is at least functionally equivalent to the original product, or (3) refund the purchase price of the product." Apple's Standard Warranty and Extended Warranty are express warranties under Louisiana law.

59.     The purchase price of Apple Devices includes the Standard Warranty described herein, which is part of the basis of the bargain.  Apple sells the extended Warranty to class members for an additional fee.

60.     Apple breached and continues to breach its express warranties by engaging in the conduct alleged herein.

61.     Plaintiff and class members have been and continue to be damaged by Apple's breach of its express warranties because Plaintiff and class members have paid for repairs to Apple Devices or have spent money o buy replacement App device that should have been covered by Apple. Furthermore, as a result of Apple's breach of its express warranties, Plaintiff and class members have suffered damages in an amount to be determined at trial.

62.     Therefore, Plaintiff and the class members are entitled to legal and equitable relief against Apple, including damages, specific performance, rescission, restitution, attorney's fees, costs of litigation, and other relief as appropriate.

## COUNT III
### (Declaratory Relief)

63.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

64.     Pursuant to Federal Rule of Civil Procedure 57, Plaintiff seeks a declaration of the parties' rights and duties.

65.     Among the unfair, fraudulent, and unlawful conduct Plaintiff has alleged in this Complaint is Apple's decision to equip Apple Devices with external Liquid Submersion Indicators that provide false-positive results, thereby enabling Apple to use the Liquid-Damage Exclusion provision of its Standard and Extended Warranties as a means of avoiding its obligations under those warranties and to deny consumers the right to obtain cost-free repairs or replacements of their Apple Devices.

66.     Plaintiff alleges that, under the circumstances alleged herein, the manner in which Apple has applied, and continues to apply, the Liquid-Damage Exclusion is unconscionable under, *e.g.,* Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, *et seq.* and California Civil Code sections 1670.5 and 1770(a)(19), and that Apple's efforts to limit its contractual obligations violates the public policy of the States of Louisiana and California, as articulated, *inter alia*, California Civil Code sections 1667 and 1668.  The Standard Warranty and the extended Warranty agreements at issue in this lawsuit are contracts of adhesion and, as applied by Apple, when considered in light of the parties' grossly unequal bargaining power.

67.     Apple has denied Plaintiff's allegations and therefore, an actual controversy has arisen and now exists between Apple and Plaintiff and the proposed class.  Accordingly, Plaintiff hereby requests a judicial declaration of the rights and duties of the parties with respect to each of the foregoing issues in controversy, including, but not limited to, an order declaring (a) that Apple, as the proponent of the Liquid-Damage Exclusion, bears the burden of establishing that the Liquid-Damage Exclusion justifies a finding that a Standard Warranty or an Extended Warranty is void as a result of

an Apple Device actually being damaged by submersion or immersion in liquid based solely on a triggered external Liquid Submersion Indicator, regardless of the underlying problem with the Apple Device; (b) that a triggered external Liquid Submersion Indicator is not (and was not) a sufficient basis on which to invoke the Liquid-Damage Exclusion unless a physical inspection of the Apple Device establishes that it was actually damaged by submersion or immersion in liquid; and (c) that if Apple cannot establish that an Apple Device was actually damaged, the coverage period applicable to that Apple Device is tolled from the date on which Apple denied coverage based on a triggered external Liquid Submersion Indicator until the date of which owners of those Apple Devices receive notification that Apple's invocation of the Liquid-Damage Exclusion was not valid.

### COUNT IV
#### (Violations of the Song-Beverly Consumer Warranty Act)

68.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this Complaint.

69.     Apple Devices are "consumer goods" under Civil Code section 1791(a).

70.     Plaintiff is a "buyer" under Civil Code section 1791(b).

71.     Apple's Standard Warranty is an "express warranty" under Civil Code section 1791.2, and the Extended Warranty is an express warranty as well as a service contract under Civil Code section 1791.2 and 1794.4.

72.     Apple breached and continues to breach its express warranties by engaging in the conduct alleged herein. Plaintiff, on behalf of himself and the proposed class, has notified Apple of the reach within reasonable time.

73.     Plaintiff and class members have been and continue to be damaged by Apple's breach

17

of its express warranties because Plaintiff and class members have paid for repairs to Apple Devices or have spent money to buy replacement Apple Devices that should have been covered by Apple. Furthermore, as a result of Apple's breach of its express warranties, Plaintiff and class members have suffered damages in an amount to be determined at trial.  Therefore, Plaintiff and members of the proposed class are entitled to legal and equitable relief against Apple, including damages, specific performance, rescission, restitution, attorney's fees, costs of suit, and other relief, as appropriate.

## COUNT V
### (Fraud)

74.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

75.     At all times relevant herein, Apple made misrepresentations of material fact to Plaintiff and the class (a) regarding the true nature, purpose and accuracy of the external Liquid Submersion Indicators; (b) regarding the scope, characteristics and availability of coverage of the Standard Warranty and Extended Warranty; and (c) regarding the reasons for denying Plaintiff and the class he proposes to represent coverage under the Standard and Extended Warranties, including but not limited to advising Plaintiff and members of the class that their Apple Devices had been damaged by liquid spill or submersion when they had not.  Apple knew those representations were false when it made them.

76.     Apple has also concealed material facts from Plaintiff and the class, including the following:

a)     That the external Liquid Submersion Indicators do not accurately indicate that Apple Devices have been damaged as a result of liquid spills or submersion

in liquid when they have not;

b)      That because the external Liquid Submersion Indicators are not reliable indicators of actual damage, Apple Devices whose external Liquid Submersion Indicators have been triggered must be inspected by persons with expertise in conducting such inspections for the purpose of determining whether the problems for which consumers seek warranty coverage constitute damage caused by a spill or submersion in liquid; and

c)      That Apple equipped Apple Devices with external Liquid Submersion indicators and uses their false-positive readings to avoid its obligations under its Standard and Extended Warranties.

77.      Apple had a duty to disclose these facts, regardless of the existence of privity (*see, e.g.,* Cal. Civ. Code § 1711), by virtue of (a) Apple's exclusive knowledge about the reason it equipped Apple Devices with external Liquid Submersion Indicators, the reliability of those indicators, its intention to reply on the false-positive results provided by those indicators to avoid its Standard and extended Warranties, and its awareness that plaintiff was not reasonably likely to discover these facts; (b) Apple's active concealment of those facts from Plaintiff and members of the class (by, *inter alia,* making false representations about the nature, purpose and accuracy of the external Liquid Submersion Indicators, the nature and scope of Apple's obligations under its Standard and Extended Warranties, and the reasons for denying warranty coverage, and by enforcing a policy by which consumers are prohibited from recording or witnessing physical inspections of Apple Devices); and (c) Apple's statutory and common-law obligations to disclose material information to the consumers of Apple Devices, as alleged herein.  Plaintiff would have acted

19

differently if Apple had disclosed this information to plaintiff and allowed him to make a fully-informed decision before he purchased his iPhone.

78.     Apple's misrepresentations of material fact are uniform, some of which can be found in its warranty contracts and other documents.

79.     The facts Apple concealed from consumers are similarly material and uniform.

80.     Apple made the misrepresentations of material facts and omitted the material facts alleged herein intentionally and/or recklessly, with the intention that Plaintiff and members of the class he proposes to represent rely on them.  Plaintiff and the proposed class relied on Apple's misrepresentations and would have acted differently had the omitted facts been disclosed to him.

81.     As a proximate result of Apple's misrepresentations and concealment and suppression of material facts, plaintiff and the proposed class have sustained damages by, *inter alia*, (a) paying more for Apple Devices that they would have paid if Apple had not misrepresented and concealed the facts alleged herein; (b) paying for an Extended Warranty that Apple did not intend to honor in the event that a Liquid Submersion Indicator is triggered for reasons that have nothing to do with spills or submersion in liquid; and (c) being forced to pay for the repair or replacement of Apple Devices while those devices were covered by a Standard or Extended Warranty as a result of Apple's fraudulent refusal to honor its obligations under those agreements.

82.     Because Apple engaged in the conduct alleged herein deliberately and with willful and malicious intent, Plaintiff and the proposed class are entitled to an award of punitive damages. The total amount of damages suffered by Plaintiff and the class will be proved at trial.

20

## COUNT VI
### (Unfair and Deceptive Acts and Practices
### in Violation of the California Consumers Legal Remedies Act)

83.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

84.     This claim for relief is brought pursuant to the CLRA.  Plaintiff is a "consumer," as that term is defined by Civil Code section 1761(d) because he bought his iPhone for personal, family, or household purposes.

85.     Plaintiff and members of the Consumer Subclass have engaged in a "transaction" with Apple, as that term is defined by Civil Code section 1761(e).

86.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and were undertaken by Apple in transactions intended to result in, and which resulted in, the sale of goods to consumers.

87.     By engaging in the conduct alleged in herein, Apple has violated subdivisions (a)(5), (a)(7), (a)(9), (a)(14), and (a)(19) of California Civil Code section 1770 by, *inter alia*, misrepresenting and falsely advertising that the price of Apple Devices includes one year of coverage "against defects in materials and workmanship under normal use" under the Standard Warranty and that the Extended Warranty extends that coverage to two years without disclosing Apple's policy of deeming warranty coverage void if a Liquid Submersion Indicator was triggered, regardless of whether the Apple Device in question had actually been damaged by exposure to liquid.

88.     In actuality, and unbeknown to Plaintiff and members of the proposed class, Apple's Standard and Extended Warranties were (and are) illusory.  By selling Apple Devices with an illusory Standard Warranty and by selling Extended Warranty coverage that is equally illusory,

Apple has represented, and continues to represent, that Apple Devices and the Standard and Extended Warranties that pertain to them have characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular standard, quality, or grade, when they are not, in violation of Civil Code section 1770, subsections (a)(5) and (a)(7).

89.   By engaging in the conduct alleged herein, above, Apple has also advertised, and continues to advertise, goods with the intent not to sell them as advertised, in violation of California Civil code section 1770(a)(9).  Additionally, Apple has violated and continues to violate subsections California Civil Code section 1770, subsections (a)(14) and (a)(19), by engaging in the conduct alleged herein, including, but not limited to, inserting a Liquid-Damage Exclusion provision in its Standard Warranty and its Extended Warranty that is unconscionable as applied under the circumstances alleged herein; by voiding its Standard Warranty and its Extended Warranty in an unconscionable manner; by failing to disclose that Apple does not intend to honor the terms of its Standard Warranty and its Extended Warranty if an external Liquid Submersion Indicator is triggered; and by representing that the sale of Apple Devices and the sale of the Extended Warranty policies conferred rights and remedies, which they did not.

90.   Plaintiff seeks an order awarding actual and, because Apple engaged in the conduct alleged herein deliberately and with willful and malicious intent, punitive damages.  The total amount of damages suffered by Plaintiff and the class will be proved at trial.

91.   Plaintiff also seeks an order enjoining Apple from violating the CLRA by continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard and Extended Warranty coverage for Apple Devices without confirming that Apple Devices have actually been damaged by submersion or immersion in liquid, and from making false representations regarding the

nature, characteristics, and scope of its Standard and Extended Warranties, and that a triggered external Liquid Submersion Indicator is sufficient to void applicable warranties.

92.    In addition, Plaintiff seeks an order extending the warranty on all Apple Devices pursuant to California Civil Code section 1780, subdivisions (A)(2) and (a)(5) by tolling the coverage period applicable to that Apple Device from the date on which Apple denied coverage based on a triggered external Liquid Submersion Indicator until the date on which owners of those Apple Devices receive notification that Apple's invocation of the Liquid-Damage Exclusion was not valid.

**COUNT VII**
**(Unlawful, Fraudulent, and Unfair Business Practices**
**in Violation of the Unfair Competition Law)**

93.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

94.    By committing the acts and practices alleged herein, Apple has engaged in unlawful, fraudulent, and unfair business practices in violation of the UCL:

a.    **Unlawful Conduct:** As a result of engaging in the conduct alleged in this Complaint, Apple has violated the UCL's proscription against engaging in unlawful conduct by virtue of **(i)** its fraudulent and deceitful conduct in violation of California Civil code sections 1709 through 1711, as alleged in **(ii)** its violations of the Consumers Legal Remedies Act, California civil Code sections 1770(a)(5), (a)(7), (a)(9), (a)(14), and (a)(19); **(iii)** its violations of the False Advertising Law, California Business & Professions Code sections 17500 through 17536; and **(iv)** its violations of the song-

Beverly Consumer Warranty Act, Civil Code sections 1791 through 1793.2.

b.  **Fraudulent Conduct:** Apple has violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct alleged herein.

c.  **Unfair Conduct:** Apple has violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged in this Complaint.

95.   Apple's violations of the UCL continue to this day.  As a direct and proximate result of Apple's violations of the UCL, Plaintiff has suffered actual damage in that, *inter alia*, she paid more for his Apple Devices than he would have had Apple not represented that their purchase price includes the Standard Warranty and paid for a replacement iPhone because Apple refused Plaintiff's request that it provide him with a cost-free repair or replacement pursuant to the Standard Warranty.

96.   Pursuant to Section 17203 of the UCL, Plaintiff and the class seek an order that **(a)** enjoins Apple from continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard and Extended Warranty coverage; **(b)** requires Apple to honor the terms of its Standard and Extended Warranty policies; **(c)** enjoins Apple from continuing to make false representations regarding the characteristics and scope of its Standard and Extended Warranties, and the nature, purpose, and accuracy of external Liquid Submersion Indicators; **(d)** compels Apple to extend warranty coverage by tolling the coverage period from the date on which Apple denied coverage based on a triggered external Liquid Submersion Indicator until the date on which the Plaintiff and the class; and **(ii)** by adding the amount of coverage that remained as of the date of tolling (*e.g.,* if six months of warranty coverage remained as of the date on which Apple denied coverage, six months of coverage would remain as of the date on which judgment is entered in favor

of Plaintiff and the proposed class); **(e)** requires Apple to make full restitution of all moneys wrongfully obtained from its violations of the UCL, as alleged in this Complaint; and **(f)** requires Apple to pay Plaintiff's and the class's attorney fees and costs.

### COUNT VIII
### (Unjust Enrichment)

97.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

98.     By engaging in the conduct described in this Complaint, Apple has been unjustly enriched by, *inter alia*, **(a)** its sale of Apple Devices at inflated prices due to the ostensible inclusion of a one-year Standard Warranty, **(b)** the sale of Extended Warranties; **(c)** avoiding the costs associated with complying with Apple Devices' Standard and Extended Warranties; **(d)** charging consumers to repair Apple Devices while those devices were covered by Standard and/or Extended Warranties; **(e)** selling consumers replacement Apple Devices while those devices were covered by Standard and Extended Warranties and **(f)** requiring consumers to "trade in" their iPhones without providing them with any compensation for it.

99.     As a proximate result of Apple's conduct, Apple obtained secret profits by which it became unjustly enriched at Plaintiff's and the class Members' expense.  Under the circumstances allege herein, it would be unfair for Apple to retain the profits it has unjustly obtained at the expense of the Apple and the class.

100.     Accordingly, Plaintiff seeks an order establishing apple as a constructive trustee of the profits that served to unjustly enrich Apple, together with the interest during the period in which Apple has retained such funds, and requiring Apple to disgorge those funds to Plaintiff and members

of the proposed class in a manner to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief in this Complaint as follows:

1.      For an order certifying the action as a class action, on behalf of the proposed class, or any other Class or subclass the Court may deem appropriate pursuant to Federal Rule of Civil Procedure 23;

### As to Count I

2.      For an award of actual damages and restitution pursuant to La.R.S. 51:1408, La.R.S. 51:1409 and any other applicable statute;

3.      For an award of statutory penalties pursuant to La.R.S. 51:1409;

4.      For injunctive relief pursuant to La.R.S. 51:1408.

5.      For any and all other relief the Court deems just and appropriate;

### As to Count II

6.      For an award of damages, specific performance, restitution, attorney's fees, costs of litigation, judicial interest and other relief as appropriate;

### As to Count III

7.      For a judicial declaration pursuant to Federal Rule of Civil Procedure 57 that **(a)** Apple's limitation of warranty coverage on the Apple Devices violates the public policy of the States of Louisiana and California for the reasons set forth in Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, *et seq.* and California Civil Code sections 1667 and 1668, and that such a limitation is unconscionable because the warranty agreements at issue in this lawsuit are contracts of adhesion,

and because they are unduly oppressive, particularly when considered in light of the parties' radically unequal bargaining power; **(b)** that a triggered external Liquid Submersion Indicator is not (and was not) a sufficient basis on which to invoke the Liquid-Damage Exclusion unless a physical inspection of the Apple Device establishes that it was actually damaged by submersion of immersion in liquid; and **(c)** that if Apple cannot establish that a Apple Device was actually damaged, the coverage period applicable to that Apple Device is tolled from the date on which Apple denied coverage based on a triggered external Liquid Submersion Indicator until the date on which owners of those Apple Devices receive notification that Apple's invocation of the Liquid-Damage Exclusion was not valid;

<u>**As to Count IV**</u>

8.     For an order providing Plaintiff and the proposed class with legal and equitable relief against Apple, including damages, specific performance, restitution, attorneys' fees, costs of suit, and other relief as appropriate;

<u>**As to Count V**</u>

9.     For an award of monetary damages, including but not limited to, compensatory, incidental and consequential damages commensurate with proof at trial for the acts complained of herein;

10.     For an award of punitive damages in an amount consistent with applicable statutes and precedent;

<u>**As to Count VI**</u>

11.     For an order awarding damages pursuant to California Civil code section 1780(a)(1);

12.     For an order pursuant to California Civil Code section 1780(a)(2) enjoining apple from continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard

and Extended Warranty coverage for Apple Devices without confirming they have actually been damaged by submersion or immersion in liquid, and from making false representations regarding the nature, characteristics, and scope of its Standard and Extended Warranties and the Liquid Submersion Indicators on Apple Devices;

13.    For an order pursuant to California Civil Code section 1780, subdivisions (a)(2) and (a)(5) requiring apple to extend the warranty on all Apple Devices by tolling the coverage period applicable to that Apple Device from the date on which apple denied coverage based on a triggered external Liquid Submersion Indicator until the date on which owners of those Apple devices receive notification that apple's invocation of the Liquid-Damage Exclusion was no valid;

14.    For an order awarding restitution pursuant to California Civil Code section 1780(a)(3);

15.    For an order awarding punitive damages pursuant to California Civil Code section 1780 (a)(4);

### As to Count VII

16.    For an order that **(a)** enjoins Apple from continuing to rely on the external Liquid Submersion Indicators as a basis for denying Standard and Extended Warranty coverage; **(b)** requires Apple to honor the terms of its Standard and Extended Warranty policies; **(c)** enjoins apple from continuing to make false representations regarding the characteristics and scope of its Standard and Extended Warranties, and the nature, purpose, and accuracy of external Liquid Submersion Indicators; **(d)** compels Apple to extend warranty coverage **(i)** by tolling the coverage period from the date on which Apple denied coverage based on a triggered external Liquid Submersion Indicator until the date on which Plaintiff and the class is right to coverage is determined and **(ii)** by adding the

28

amount of coverage that remained as of the date of tolling (*e.g.,* if six months of warranty coverage remained as of the date on which Apple denied coverage, six months of coverage would remain as of the date on which judgment is entered in favor of Plaintiff and the proposed class); **(e)** requires Apple to make full restitution of all moneys wrongfully obtained from its violations of the UCL, as alleged in this complaint; and **(f)** requires Apple to pay Plaintiff's and the class's attorney fees and costs;

## As to Count VIII

17.     For an order compelling apple to provide restitution of the amounts by which it has been unjustly enriched by, *inter alia,* **(a)** its sale of Apple Devices at inflated prices due to the ostensible inclusion of a one-year Standard Warranty, **(b)** the sale of Extended Warranties; **(c)** avoiding the costs associated with complying with Apple Devices' Standard and Extended Warranties; **(d)** charging consumers to repair Apple Devices while those devices were covered by Standard and/or Extended Warranties; **(e)** selling consumers replacement Apple Devices while those devices were covered by Standard and Extended Warranties and **(f)** requiring consumers to "trade in: their iPhones without providing them with any compensation for it.

## As to All Counts

18.     For an award of attorney fees;

19.     For an award of costs;

20.     For an award of pre- and post-judgment interest on any amounts awarded; and

21.     For any and all other relief the Court deems just and appropriate.

29

## DEMAND FOR JURY TRIAL

Plaintiff and the proposed class demand a jury trial in this action for all the causes of action so triable.

Respectfully Submitted,

   s/ Scott E. Brady
PHILIP BOHRER, Bar #14089
SCOTT E. BRADY, Bar #24976
BOHRER LAW FIRM, L.L.C.
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana  70809
Telephone:  (225) 925-5297
Facsimile: (225) 231-7000
phil@bohrerlaw.com
scott@bohrerlaw.com

and

JOHN P. WOLFF, III, Bar #14504
CHRISTOPHER K. JONES, Bar #28101
KEOGH, COX & WILSON
701 Main Street
Post Office Box 1151
Baton Rouge, Louisiana  70821
Telephone:  (225) 383-3796
Facsimile: (225) 343-9612
jwolff@kcwlaw.com
cjones@kcwlaw.com